IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

JAMES WALKER,                                                                                                      PLAINTIFF
ADC #162619

v.                                          5:19-cv-00267-JM-JJV

ARKANSAS BOARD OF CORRECTION, *et al.*                         DEFENDANTS

## PROPOSED FINDINGS AND RECOMMENDATIONS

## INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge James M. Moody, Jr. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1.     Why the record made before the Magistrate Judge is inadequate.

2.     Why the evidence proffered at the hearing (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3.     The details of any testimony desired to be introduced at the new hearing in the form

of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the new hearing.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing.  Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

## DISPOSITION

### I. INTRODUCTION

James Walker ("Plaintiff") is a prisoner in the Tucker Unit of the Arkansas Division of Correction ("ADC").  He has filed a *pro se* Amended Complaint alleging Defendants Dr. Chris Horan, Health Services Administrator Carol Chisom, Director of Nurses Melissa Moore, and Kimberly Hofmann violated the Civil Rights Act ("§ 1983"), Title II of the Americans with Disabilities Act ("ADA"), and Section 504 of the Rehabilitation Act ("RA") by failing to provide him with orthopedic shoes and water for his C-PAP machine.[1]  (Doc. No. 10.)  Plaintiff says the improper medical care started in January 2019.  (*Id.*)

Defendants have filed a Motion for Summary Judgment arguing all claims against them should be dismissed without prejudice because Plaintiff did not properly exhaust his administrative remedies before filing this lawsuit.  (Doc. Nos. 36, 37, 38.)  Plaintiff has filed a Response.  (Doc. Nos. 41, 43.)  After carefully reviewing the pleadings and for the following reasons, I conclude the Motion for Summary Judgment should be GRANTED and Plaintiff's claims against

---

[1] All other claims and Defendants were dismissed without prejudice during screening mandated by 28 U.S.C. § 1915A.  (Doc. No. 17.)

all remaining Defendants should be DISMISSED without prejudice.

## II.   SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986). When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party. *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002). The nonmoving party may not rely on allegations or denials but must demonstrate the existence of specific facts that create a genuine issue for trial. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007). The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy. *Id.* (citations omitted). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

## III.   ANALYSIS

The Prison Litigation Reform Act ("PLRA") requires an inmate to exhaust prison grievance procedures before filing suit in federal court. *See* 42 U.S.C. § 1997e(a); *Jones v. Bock*, 549 U.S. 199, 202 (2007); *Townsend v. Murphy*, 898 F.3d 780, 783 (8th Cir. 2018). Exhaustion under the PLRA is mandatory and is required for all actions "brought with respect to prison

conditions, whether under § 1983 or any other Federal law." *Porter v. Nussle*, 534 U.S. 516, 524 (2002); *see also Woodford v. Ngo,* 548 U.S. 81, 85 (2006) ("exhaustion of available administrative remedies is required for any suit challenging prison conditions, not just for suits under § 1983"). Thus, the exhaustion requirement applies to Plaintiff's ADA and RA claims, as well as his § 1983 claim.

To properly exhaust administrative remedies, prisoners must "complete the administrative review process in accordance with the applicable procedural rules, rules that are defined not by the PLRA, but by the prison grievance process itself." *Jones,* 549 U.S. at 218. "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, not the PLRA, that define the boundaries of proper exhaustion." *Muhammad v. Mayfield*, 933 F.3d 993, 1001 (8th Cir. 2019); *King v. Iowa Dept. of Corr.*, 598 F.3d 1015, 1054 (8th Cir. 2010). Thus, whether an inmate has properly exhausted administrative remedies will depend on the specific requirements of the prison's grievance policy.

The ADC grievance policy in effect at the time of the alleged constitutional violations was Administrative Directive 14-16. (Doc. No. 38-1.) Pursuant to that Directive, the first step is for an inmate to file an informal resolution with the designated problem solver within fifteen days of the incident. (*Id*.) The form must include "a brief statement that is specific as to the substance of the issue or complaint to include the date, place, personnel involved or witnesses, and how the policy or incident affected the inmate submitting the form." (*Id*. at 8-9.) Following an attempt at informal resolution, an inmate may proceed to step two by filing a formal grievance with the Health Services Administrator ("HSA") within three working days of receiving a response to the informal resolution. (*Id.* at 11-14.) The HSA must provide a written response within twenty

working days of receiving the formal grievance. (*Id.*) An inmate may then proceed to step three by appealing, within five working days, to the ADC Deputy Director for Health and Correctional Programs ("ADC Deputy Director"). (*Id*. at 14-16.) "A written decision or rejection of an appeal at this level is the end of the grievance process." (*Id*. at 15.) If ADC personnel are late in responding at step two or three, prisoners may proceed to the next step without a response. (*Id.* at 10, 11, 13.) Finally, Administrative Directive 14-16 includes the following warning:

> Inmates are hereby advised that they must exhaust their administrative remedies as to all defendants *at all levels* of the grievance procedures *before* filing a Section 1983 lawsuit and Claims Commission claim. If this is not done, their lawsuits or claims may be dismissed immediately.

(*Id.* at 20) (emphasis added.)

The ADC Medical Grievance Supervisor says, in her sworn Declaration, Plaintiff did not fully exhaust any grievances about his medical care claims from the time they allegedly began, in January 2019, until he filed this lawsuit, on August 14, 2019. (*Id*. at 3.) My review of the pleadings confirms this to be correct.

Although Defendants do not mention it in their Brief or in the Medical Grievance Supervisor's Declaration, early in this case Plaintiff filed grievance TU-19-698 in the record.[2] (Doc. No. 12.) In that grievance, Plaintiff alleged he was not receiving water for his C-PAP machine, which is a claim he is pursuing in this lawsuit. (*Id*.) But, Plaintiff filed TU-19-698 with ADC officials on August 17, 2019, and he obtained a final ruling on October 14, 2019 --

---

[2] Plaintiff takes issue with that omission. (Doc. No. 42.) It appears the Declaration did not mention TU-19-698 because, as will be explained herein, it was exhausted after Plaintiff filed this lawsuit, and thus, legally irrelevant. Nevertheless, the Court reminds Defendants that they bear the burden of proof when seeking dismissal due to a lack of exhaustion. *Jones*, 549 U.S. at 216; *Porter v. Sturm*, 781 F.3d 448, 451 (8th Cir. 2015). Thus, it is their obligation to explain why any grievances filed in the record are not proper exhaustion and address any arguments the prisoners make in their complaints, or otherwise, about why administrative remedies were unavailable.

5

which was *after* he commenced this lawsuit on August 14, 2019.  (*Id.*, Doc. No. 1.)  Similarly, in his Response to the Motion for Summary Judgment, Plaintiff refers to grievance VSM-19-1022, which is also about the lack of water for his C-PAP machine.  (Doc. No. 43.)  But, Plaintiff filed that grievance on December 13, 2019, and obtained a final ruling on March 19, 2020 – both of which were long *after* he commenced this lawsuit on August 14, 2019.  (*Id.*)

The law on this point is clear.  "Under the plain language of section 1997e(a), an inmate must exhaust administrative remedies *before* filing suit in federal court." *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003) (emphasis in the original).  Dismissal is mandatory if "exhaustion was not *completed* at the time of filing."  *Id.* (emphasis added); *see also Booth v. Churner,* 532 U.S. 731, 733 (2001) (the PLRA requires prisoners to complete exhaustion "before suing over prison conditions"); *Harris v. Kemna*, No. 05-2746, 2005 WL 3159569 (8th Cir. Nov. 29. 2005) (unpublished opinion) (affirming dismissal when exhaustion was not complete at the time of filing).  Thus, any subsequent amendments to the original complaint are irrelevant because the pertinent date is when the lawsuit is initially filed.  And, the ADC's grievance policy reminds prisoners they "must fully exhaust the grievance prior to filing a lawsuit."  (Doc. 38-1 at 7-8.)  Because Plaintiff completely exhausted TU-19-698[3] and TU-19-1022 *after* he commenced this lawsuit on August 14, 2019, they cannot be considered.

---

[3]  The HSA's response to grievance TU-19-0698 was dated Monday, October 7, 2019.  (Doc. No. 12 at 3.)  Plaintiff's appeal was due five "working days" later, which - excluding the weekend as specified by Admin. Dir. 14-16 § III(E) - was Monday, October 14, 2019. (Doc. No. 38-1 at 5, 14.) Plaintiff signed his appeal on October 8, 2019, and it was stamped "received" by the ADC Deputy Director's office on October 14, 2019.  (Doc. No. 12 at 4.)  Thus, it appears his appeal was timely filed either with or without the prison mailbox rule. *See Sulik v. Taney Cnty., Mo*., 316 F.3d 813, 815 (8th Cir. 2003).  But, for unknown reasons, it was rejected as being untimely filed. (Doc. 12 at 6.)  Nevertheless, because these events occurred *after* Plaintiff commenced this lawsuit, they cannot be a basis for denying Defendants' Motion for Summary Judgment.

Importantly, there is no evidence Plaintiff was prevented from timely exhausting his available administrative remedies. *See* 42 U.S.C. § 1997e(a) (requiring prisoners to exhaust only "available" administrative remedies); *Ross v. Blake*, 136 S. Ct. 1850, 1860 (2016) (administrative remedies are "unavailable" when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation"). Plaintiff says ADC officials were late in responding to TU-19-698, and they were often late in responding to his other grievances.[4] But, as previously mentioned, Administrative Directive 14-16 allows prisoners to proceed to the next step in the grievance procedure in such circumstances. (Doc. No. 38-1 at 14-16.)

For these reasons, I conclude Defendants are entitled to dismissal because Plaintiff failed to timely exhaust his available administrative remedies. *See Jones*, 549 U.S. at 211 ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court"). I realize Plaintiff may perceive my exhaustion findings as an unfairly technical "gotcha" mechanism to keep him out of court. To the contrary, the exhaustion requirement plays a critical role in the remedy process. The Eighth Circuit has explained this important role as follows:

> Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. In other instances, the internal review might filter out some frivolous claims. And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy.

---

[4] Defendants did not address this allegation, which was first raised in the Amended Complaint. (Doc. No. 10 at 8.)

*Johnson*, 340 F.3d at 626-27; *see also Woodford*, 548 U.S. at 88 ("Exhaustion gives an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court, and it discourages disregard of [the agency's] procedures").

## IV.   CONCLUSION

IT IS, THEREFORE, RECOMMENDED THAT:

1.   Defendants' Motion for Summary Judgment (Doc. No. 36) be GRANTED, Plaintiff's claims against Defendants Horan, Chisom, Moore, and Hofmann be DISMISSED without prejudice, and this case be CLOSED.

2.   The Court certify, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from an Order adopting these recommendations and the accompanying Judgment would not be taken in good faith.

DATED this 30th day of April 2020.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE